UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**PETER CLIFTON NORTHCUTT**,<br><br>Debtor. | Case No. **09-60946-7** |
| **NEIL DIAMOND** and<br>**ALBERT DIAMOND**,<br><br>Plaintiffs.<br><br>-vs-<br><br>**PETER CLIFTON NORTHCUTT**,<br><br>Defendant. | Adv No. **09-00057** |

## *MEMORANDUM of DECISION*

At Butte in said District this 15th day of January, 2010.

Pending in this Adversary Proceeding is the Plaintiffs' Joint Motion for Summary Judgment as to Count 1 of the Amended Adversarial Complaint filed November 30, 2009, at docket entry no. 43. The Plaintiffs' Motion for Summary Judgment was accompanied by the affidavits of Neil Diamond and Albert Diamond, a Memorandum and a document that is titled "Separate Statement of Uncontroverted Facts." In response thereto, the Debtor/Defendant filed a Response to the Plaintiffs' Motion for Summary Judgment, along with the Debtor/Defendant's Affidavit in Opposition to Plaintiffs' Motion for Summary Judgment, a Statement of Genuine

1

Created by Neevia Document Converter trial version http://www.neevia.com

Issues and the Debtor/Defendant's Brief in Opposition to the Plaintiffs' Motion for Summary Judgment.

Mont. LBR. 7056-1(1) requires that "[a] separate, short, and concise 'Statement of Uncontroverted Facts' must accompany every motion for summary judgment. Failure to submit this statement constitutes grounds for denial of the motion. The statement shall set forth separately each fact, in serial, not narrative form, and shall specify the specific portion of the record where the fact can be found (e.g., affidavit, deposition, etc.)." The Plaintiffs' Separate Statement of Uncontroverted Facts does not set forth any facts on which this Court can grant summary judgment.

The Plaintiffs' alleged undisputed facts are basically as follows:

1. On December 11, 1998 the Defendant, Peter C. Northcutt solicited investment capital in writing which states, "you will find information pertaining to the gold mine outside of Big Timber." Letter represents gold mine under development and states gold amount of 2 to 5 ounces per ton.

2. The Plaintiff, Neil Diamond, DDS, John Dorris, DDS and the Defendant, Peter C. Northcutt entered into a written agreement to fund further development by the Defendant. The initial investment capital tendered by the Plaintiff, Neil Diamond, DDS were in the amount of Sixty Six Thousand, Six Hundred, Forty Five Dollars ($66,645.00), between January 1999 and July 31, 2000.

64. [T]he samples provided by Defendant, Peter C. Northcutt revealed "the liberation analysis as indeterminate since there are little or no precious metals in Lodestar ore."

Created by Neevia Document Converter trial version http://www.neevia.com

        Dr. Anderson's Summary concluded, "Based on the samples received at CAMP, The Lodestar ore contains little or no precious metals including Pt, Pd, Rh, Ir, Ru, Os, Au or Ag.  As such metallurgical processing is not required for this ore.

66. Despite the Montana Tech Report, which was known to the Defendant but undisclosed by Defendant, Peter C. Northcutt, for approximately 26 months, the Defendant, Peter C. Northcutt issued a Projected Gross Estimated Value of LME Primary Ore Stockpile of precious order in excess of $9,000,000.00 to the members of Lodestar Mining & Exploration LLC.

67. Defendant, Peter C. Northcutt represents himself as having a PhD in exploration geology.

82. Email confirming Defendant, Peter C. Northcutt did not earn a Doctorate Degree in Geology.

109. The Northcutt samples of 1999 and sampling locations of 1999 were sub-economic with the exception of only one single exception.

114. Evergreen I, LLC's report by John Williams, after due diligence, conferences with Defendant, Peter C. Northcutt produced improperly documented original samples, Defendant's failure to utilize a 3-D computer assisted drawing program to assist in the core drilling program, (accepted industry standard).
The conclusion of this professional investigation is the core drilling program perfected by David Hurst was accomplished in a very professional manner.  The results indicated a lack of positive results from core samples and the core drill holes being accomplished at both magnetic and true north I (the author) feel the

Created by Neevia Document Converter trial version http://www.neevia.com

>Northcutt ore body could not have been missed, basis the data provided to Mr. Hurst by Dr. Northcutt. We find the work utterly conclusive and will survive any rigorous prudent man test.
>
>As a final note, we had no understanding of the drilling program of the two drill holes perfected by Dr. Northcutt, prior to this visit and were totally shocked that any prudent geologist would advance a mining operation based on two shallow core drill holes.

The Court can also reasonably conclude from the Plaintiffs' Separate Statement of Uncontroverted Facts that Neil Diamond obtained a consent judgment against the Debtor/Defendant. That consent judgment presumably stems from Neil Diamond's $66,645.00 investment in Lodestar Mining & Exploration, LLC.

The balance of the Plaintiffs' Separate Statement of Uncontroverted Facts is nothing more than an exhibit list that includes a description of the exhibit, the date the exhibit came into existence and the Plaintiffs' "# Id." For example, the Plaintiffs' third undisputed fact reads as follows:

>3.   1/7/99   State of Montana Small Miner Exclusion Affidavit   #114
>
>DEQ State of Montana prerequisite to mining exploration under Small Miners Exclusion Statement, Part 3, Chapter 4, Title 82, MCA. Filed by Defendant on 1/7/99.

### APPLICABLE STANDARD for SUMMARY JUDGMENT

Summary judgment is governed by FED. R. BANKR. P. 7056. Rule 7056, incorporating FED. R. CIV. P. 56(c), states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

Created by Neevia Document Converter trial version http://www.neevia.com

as to any material fact and that the movant is entitled to judgment as a matter of law." "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial." *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide "N' Dive Corp. (In re Aquaslide "N" Dive Corp.)*, 85 B.R. 545, 547 (9th Cir. BAP 1987)). The manner in which this burden is proven depends on which party has the burden on a particular claim or defense at the time of trial.

> If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence–using any of the materials specified in Rule 56(c)–that would entitle it to a directed verdict if not controverted at trial. Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery. If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 330-34, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986) (Brennan dissent) (citations omitted). *See also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-06 (9th Cir. 2000) (discussing burdens for withstanding summary judgment).

When seeking summary judgment, the moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth

Created by Neevia Document Converter trial version http://www.neevia.com

specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986); FED. R. CIV. P. 56(e). *See also Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985) ("the opponent must affirmatively show that a material issue of fact remains in dispute"). That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

To demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible into evidence. *Aquaslide*, 85 B.R. at 547. All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509. However, "[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv.*, 809 F.2d at 630 (citing *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense." *Id*.

If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *T.W. Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 202 (1986). Thus, the Court's ultimate inquiry is to determine

Created by Neevia Document Converter trial version http://www.neevia.com

whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence.  *T.W. Elec. Serv.*, 809 F.2d at 631.  In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

## APPLICABLE STANDARD under 11 U.S.C. § 523(a)(2)(A)

Count I of the Plaintiffs' Amended Complaint seeks nondischargeability of a State Final Consent Judgment under 11 U.S.C. § 523(a)(2)(A).  It is well-settled that the Bankruptcy Code's central purpose is to provide a fresh start to the honest but unfortunate debtor. *See Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).  However, under certain circumstances, a creditor may seek to except from a debtor's discharge certain debts.  *See* 11 U.S.C. §§ 523(a).  Nevertheless, consistent with effectuating the underlying purposes of the Bankruptcy Code, exceptions to discharge under §§ 523 are to be narrowly construed.  *See Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir. 1992).  Notwithstanding the weighty burden, a creditor, in order to prevail, need only establish the elements of nondischargeability under 11 U.S.C. § 523, by a preponderance of the evidence.  *See Grogan v. Garner*, 498 U.S. at 287-88.

To establish nondischargeability as a result of fraud under § 523(a)(2)(A)[1], courts in the

---

[1]  11 U.S.C. § 523(a)(2)(A) reads:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–

\* \* \*

    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by–
        (A) false pretenses, a false representation, or actual fraud, other than a

7

Created by Neevia Document Converter trial version http://www.neevia.com

Ninth Circuit employ the following five-part test:

      (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor;
      (2) knowledge of the falsity or deceptiveness of his statement or conduct;
      (3) an intent to deceive;
      (4) justifiable reliance by the creditor on the debtor's statement or conduct; and
      (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

*Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1246 (9th Cir. 2001*); American Express Travel Related Services Co. Inc. v. Hashemi (In re Hashemi),* 104 F.3d 1122, 1125 (9th Cir.1996); *Apte v. Japra, M.D., F.A.C.C., Inc. (In re Apte)*, 96 F.3d 1319, 1322 (9th Cir. 1996). The determination of nondischargeability under § 523(a)(2)(A) is a question of federal, not state law and since the elements of § 523(a)(2)(A) mirror the common law elements of fraud, courts must interpret these elements consistent with the common law definition of "actual fraud" as set forth in the Restatement (Second) of Torts (1976) §§ 525-557A.  *Field v. Mans*, 516 U.S. 59, 69, 116 S.Ct. 437, 443-44, 133 L.Ed.2d 351 (1995) ("'false pretenses, a false representation, or actual fraud,'. . . are common-law terms, and...in the case of 'actual fraud,'...they imply elements that the common law has defined them to include.").

1.  Intent to Deceive

      The first three elements of § 523(a)(2)(A), when taken together, establish the element of intent to deceive, which the creditor must establish by a preponderance of the evidence.  In other words, a creditor must establish that a debtor knowingly made a false representation, either express or implied, with the intent of deceiving the creditor.  In a two-party transaction, as distinguished from a three-party credit card transaction, the alleging party must prove the

---

      statement respecting the debtor's or an insider's financial condition.

Created by Neevia Document Converter trial version http://www.neevia.com

elements of misrepresentation and reliance directly and by a preponderance of the evidence and not by reference to the totality of the circumstances. *Compare Turtle Rock Meadows Homeowners Assoc. v. Slyman (In re Slyman)*, 234 F.3d 1081, 1086 (9th Cir. 2000) *with Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1086 (9th Cir. 1996). As to the remaining elements, a creditor sustains its burden of proof under § 523(a)(2)(A), if a Court, after considering the facts and circumstances of a particular case, answers the following two inquiries in the affirmative: 1) did the creditor justifiably rely on the debtor's representation–reliance; and 2) was the debt sought to be discharged proximately caused by the first two elements–causation.

2. Reliance

A creditor must establish that it relied on the false representations made by the debtor. *Field*, 116 S.Ct at 438 (1995). Such reliance need not be reasonable, but it must be justifiable. *Id*. As the Supreme Court held in *Field*, "a person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *Id*. at 444 (quoting § 540 Restatement (Second) of Torts (1976)). This standard depends upon the knowledge and experience of the person to whom the representations were made. As the Supreme Court in *Field* further explained:

> [A] person is "required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation. Thus, if one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown to the purchaser before he buys it and the slightest inspection would have disclosed the defect. On the other hand, the rule stated in this Section applies only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses. Thus, a defect that any experienced horseman would at once recognize at first glance may not be patent to a person who has had no experience with horses."

Created by Neevia Document Converter trial version http://www.neevia.com

*Id*. (quoting § 541, Comment a., RESTATEMENT (SECOND) OF TORTS (1976)).  Interpreting this standard, the Ninth Circuit Court of Appeals teaches:  "Although one cannot close his eyes and blindly rely, mere negligence in failing to discover an intentional misrepresentation is no defense for fraud."  *Apte*, 96 F.3d at 1322.

### 3.  Causation

Finally, to prevail under 11 U.S.C. § 523(a)(2)(A), a creditor must establish that a claim sought to be discharged arose from an injury proximately resulting from his or her reliance on a representation that was made with the intent to deceive.  *Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991).  "Proximate cause is sometimes said to depend on whether the conduct has been so significant and important a cause that the defendant should be legally responsible."  *Id*. at 604.  Moreover, as the United States Supreme Court explained in *Field*, a court may turn to the Restatement (Second) of Torts (1976), "the most widely accepted distillation of the common law of torts" for guidance on this issue.  *Field*, 116 S.Ct. at 443.

The RESTATEMENT (SECOND) OF TORTS (1976) explains that proximate cause entails (1) causation in fact, which requires a defendant's misrepresentations to be a "substantial factor in determining the course of conduct that results in loss, § 546; and (2) legal causation, which requires a creditor's loss to "reasonably be expected to result from the reliance."  § 548A.  *See also In re Creta*, 271 B.R. 214, 220 (1st Cir. BAP 2002).  In determining the presence of proximate cause, however, courts must refrain from relying on speculation to determine whether and to what extent a creditor would have suffered a loss absent fraud.  *Siriani v. Northwestern Nat'l Ins. Co. of Milwaukee, Wisc. (In re Siriani),* 967 F.2d 302, 306 (9th Cir. 1992).

Created by Neevia Document Converter trial version http://www.neevia.com

As discussed above, the Plaintiffs in this case have the threshold burden of showing that the Debtor/Defendant had an intent to deceive the Plaintiffs. The Plaintiffs presumably want to rely on a Final Consent Judgment filed February 27, 2009, in the Montana Sixth Judicial District Court, Sweet Grass County. However, the facts in the Plaintiffs' Separate Statement of Uncontroverted Facts were drafted in such a fashion that this Court cannot determine whether the elements of § 523(a)(2)(A) are satisfied.

Moreover, it appears from the Final Consent Judgment that Plaintiff Albert Diamond released the Debtor/Defendant from that state court action. Thus, Plaintiff Albert Diamond cannot rely on the Final Consent Judgment. In addition, while the Debtor/Defendant agreed that the state court consent judgment would be nondischargeable in bankruptcy due to the fact that liability was based in part on "constructive and actual fraud causing injury to the Plaintiff, Neil Diamond", the Final Consent Judgment does not set forth adequate information for this Court to ascertain whether such cause of action should be excepted from discharge in this bankruptcy case because "[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated." RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. E (1982)."

As a final note, this Court acknowledges that it has a duty to construe pro se pleadings liberally, including pro se motions as well as complaints. *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir.2003). However, in the Ninth Circuit, pro se litigants are not excused from compliance with the rules. *Warrick v. Birdsell*, 278 B.R. 182, 187 (9th Cir. BAP2002). Ignorance of court rules does not constitute excusable neglect, even if a litigant appears pro se. *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir.1997) (quoting *Swimmer v. IRS*, 811 F.2d 1343, 1345 (9th Cir.1987)); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir.1987)("Pro se

Created by Neevia Document Converter trial version http://www.neevia.com

litigants must follow the same rules of procedure that govern other litigants.").

In this case, Albert Diamond was trained as an attorney. Nevertheless, even liberal construction of the Plaintiffs' Separate Statement of Uncontroverted Facts does not allow the Court to make the ruling that Plaintiffs seek at this time. Accordingly, the Court will enter a separate order providing as follows:

IT IS ORDERED that Plaintiffs' Joint Motion for Summary Judgment as to Count 1 of the Amended Adversarial Complaint filed November 30, 2009, at docket entry no. 43, is DENIED.

BY THE COURT

*/s/ Ralph B. Kirscher*
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

Created by Neevia Document Converter trial version http://www.neevia.com